UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DRAPER, INC., ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | 1:06-cv-808-RLY-WTL |
| ) | |
| DA-LITE SCREEN COMPANY and ) | |
| STEWART FILMSCREEN ) | |
| CORPORATION, ) | |
|     Defendants. ) | |

**ENTRY ON CLAIM CONSTRUCTION**

Plaintiff, Draper, Inc. ("Draper") filed this patent infringement case against Defendants, Da-Lite Screen Company ("Da-Lite") and Stewart Filmscreen Corporation ("Stewart") (collectively "Defendants"), alleging violations of six of its patents relating to projection screens. On March 27, 2007, Da-Lite was dismissed from the case pursuant to a settlement agreement with Draper. Draper's patent infringement claims against Stewart remain. Now before the court is the matter of claim construction. The parties have fully briefed their proposed constructions of the claims in dispute, and the court held a *Markman* hearing on December 13, 2007, regarding the same. Considering the parties' written and oral arguments and the applicable law, the court now finds as follows.

**I.     Background**

Of the six patents originally involved in this case, only the two which Stewart allegedly infringed remain at issue—U.S. Patent Nos. 6,137,629 (the "'629 patent") and

6,421,175 (the "'175 patent"). These patents involve projection screen systems commonly used in boardrooms and home theaters. The only disputed claim constructions at this point are from the '629 patent, entitled "Projection Screen System with Circuitry for Multi-Stage Installation." ('629 Patent, Draper's Ex. A to Brief in Support). As the name of the patent indicates, the novelty of this particular projection screen design, as argued by Draper, is the ability to install the system in two stages. Previous projection screen systems, including the projection screen housing and the screen itself, are installed into structures (such as an office building) at one time during construction. Because this installation process takes place during construction, the projection screen is susceptible to damage from the dirt and dust of the construction site. However, installing the system in two stages in order to protect the projection screen would be expensive because an electrician would have to come twice—once to wire the housing to a power conduit in the building and a second time to install and wire the projection screen to the housing.

The '629 patent purports to resolve this problem by setting forth a design where the projection screen system is made specifically to be installed easily in two stages. During the first stage, an electrician would install and wire the projection screen housing into a structure. Due to the electrical circuitry of the screen, however, a person with no electrical training could install the screen at a later stage of construction by simply plugging the screen into the already-installed projection screen housing, thereby protecting the screen and saving the expense of hiring an electrician twice.

Draper alleges that Stewart has infringed the '629 patent and the '175 patent "by

making, using, offering to sell, and/or selling screen systems that embody the invention[s] in [these patents], by actively inducing others to infringe [these patents], and by contributing to the infringement of [these patents]" without Draper's authority. (Amended Complaint ¶¶ 27–28).

## II.     The Law of Claim Construction

Claims are the component of a patent that "define the scope of the right to exclude." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). Construction of the claims is "the process of giving proper meaning to the claim language." *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997). Claim construction is a matter of law for the court to determine. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995).

Words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005). "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313. However, there is a difference "between using the specification to interpret the meaning of a claim," which is permissible, and "importing limitations from the specification into the claim," which is not. *Id.* at 1323.

Beyond the ordinary meaning of a term, the court may look to intrinsic evidence of record, such as the patent claims, specification, and prosecution history, to determine the

3

proper construction of a claim. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Intrinsic evidence "is the most significant source of the legally operative meaning of disputed claim language." *Id.*

If intrinsic evidence does not resolve the ambiguity in a disputed claim term, the court may rely on extrinsic evidence, such as expert testimony, dictionaries, and treatises. *Id.* at 1582, 1583; *Phillips*, 415 F.3d at 1318. While dictionaries may be appropriate guides to the meaning of a term where the patent specification does not so provide, *Mass. Inst. of Tech. v. Abacus Software*, 462 F.3d 1344, 1351 (Fed. Cir. 2006), "'a general-usage dictionary cannot overcome art-specific evidence of the meaning' of a claim term." *Phillips*, 415 F.3d at 1322 (quoting *Vanderlande Indus. Nederland BV v. I.T.C.*, 366 F.3d 1311, 1321 (Fed. Cir. 2004)). The Federal Circuit explained in *Phillips v. AWH Corp.*:

> [H]eavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification. . . . The problem is that if the district court starts with the broad dictionary definition in every case and fails to fully appreciate how the specification implicitly limits that definition, the error will systematically cause the construction of the claim to be unduly expansive. The risk of systematic overbreadth is greatly reduced if the court instead focuses at the outset on how the patentee used the claim term in the claims, specification, and prosecution history, rather than starting with a broad definition and whittling it down.

415 F.3d at 1321. Ultimately, "the construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id.* at 1316 (quoting *Renishaw PLC,* 158 F.3d at 1250).

**III.  Discussion**

The court now turns to the seven claim constructions which remain in dispute. The first five disputed terms come from Claim 1 of the '629 patent; the remaining two are from Claim 2 of the '629 patent. The court will only construe those terms in controversy and only to the extent needed to resolve the controversy. *See Vivid Techs., Inc. v. Am. Science & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

    **A.    A First Installation Assembly Installable in a Structure During a First Stage of Construction**

The first term in dispute is the word "installable" as used in the phrase "a first installation assembly installable in a structure during a first stage of construction," asserted in Claim 1 of the '629 patent. Draper argues that "installable" should be construed to mean "designed to be installed," such that the phrase reads "a first collection of assembled parts designed to be installed within a structure during a preliminary phase of construction of the structure." Stewart, on the other hand, argues that "installable" means "capable of being installed," such that the phrase reads "a set of parts capable of being installed in a structure during an initial stage of construction."

Draper, in support of its "designed to be installed" proposal, argues that its construction captures the inventive concept of the easy two-stage installation that the '629 patent sets forth. Further, it argues that Stewart's proposal is overly broad and does not shed light on the meaning of the term. Stewart argues that its "capable of being installed" proposal is proper because it represents the plain and ordinary meaning of the term

"installable," and Draper's proposal is improper, as it injects the designer's subjective intent into the claim language.

  The '629 patent clearly describes a projection screen system whose novelty is its two-stage installation design. Thus, while the word "installable" means by dictionary definition "capable of being installed," the intrinsic evidence of the '629 patent demonstrates that the meaning of "installable" within that patent comports with Draper's "designed to be installed" proposal. The claim language itself describes the two-stage installation of the projection screen system and the component parts that are to be installed at either stage. Claim 1 refers specifically to the components to be installed during "a first stage of construction" and "a second stage of construction." ('629 patent, 9:55, 10:8–9).

  The specification further sheds light on the meaning of "installable" in the '629 patent. The "Background of the Invention" section describes the problems with one-stage installation projection screen systems, such as potential damage to the projection screen, and the extra costs that may be incurred by installing the projection screen in those systems at a later stage, most notably the cost to hire an electrician twice. ('629 patent, 1:27–38). In light of these shortcomings, the "Summary of the Invention" describes how the '629 patent resolves those issues with its system that incorporates a socket into the electrical circuitry of the projection screen housing, installed first, and a plug into the electrical circuitry of the screen mounting roller, installed second. ('629 patent, 2:21–30). With these components, the installer of the screen mounting roller need only plug-in the

screen to the housing, which would require no expertise in electrical wiring.  ('629 patent, 2:27–29, 3:32–36).  Taken together, the claim language and the patent specification indicate that "installable" should be construed to read "designed to be installed."

The court finds little merit in Stewart's argument that because the "capable of being installed" construction correctly reflects the ordinary meaning of the term "installable, " it is the appropriate construction.  While "capable of being installed" may reflect the ordinary meaning of "installable" as defined in a general purpose dictionary, the court finds that Stewart's proposed construction does not reflect the term as understood by a person of ordinary skill in the art.  As the Federal Circuit warned in *Phillips*, simply applying the dictionary definition to a term without reading the term in the context of the patent claim language and specification may result in an overly broad construction.  *Phillips*, 415 F.3d at 1321 ("The problem is that if the district court starts with the broad dictionary definition in every case and fails to fully appreciate how the specification implicitly limits that definition, the error will systematically cause the construction of the claim to be unduly expansive.").  A person in the art is deemed to have read the term in the context of the patent as a whole, i.e., with the claim language and specification.  *Id.* at 1313.  Thus, the court would be incorrect in simply applying the broad dictionary definition Stewart proposes.  The patent claim language and specification indicate that the word "installable" as used in the '629 patent has a more narrow definition and further finds that  Draper's proposed construction is appropriate.  *See Scimed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340–42

(Fed. Cir. 2001) (upholding a narrow construction of the claim term at issue in light of the patent specification).

The court further finds little merit in Stewart's argument that the "designed to be installed" construction improperly requires an examination of the designer's subjective intent. An objective reading of the claim language and specification reveals that the projection screen system described in the '629 patent is designed to be installed in two stages. First, the specification differentiates the system described in the '629 patent from the prior art, i.e., the one-stage installation systems, on the ground that it is specifically a two-stage installation system. Further, the claim language itself describes the installation of the system itself in two specification stages. ('629 patent, 9:55, 10:8–9). No subjective inquiry into the designer's intent is required to understand that the '629 patent was designed specifically to be installed in two stages.

For these reasons, the court finds that "installable" as used in Claim 1 of the '629 patent means "designed to be installed." While the parties also propose different language to begin and end the phrase in which "installable" is used, neither party argues why their alternate language is appropriate or that the language they seek to construct is even in dispute.[1] As the court only constructs those terms in controversy, *Vivid Techs., Inc.*, 200 F.3d at 803, and the additional language does not appear to be in controversy,

---

[1] Draper argues that the phrase should be constructed: "a first collection of assembled parts designed to be installed within a structure during a preliminary phase of construction of the structure." Stewart argues that it should read: "a set of parts capable of being installed in a structure during an initial stage of construction."

the court will not construct the additional language. Thus, "installable" is defined as "designed to be installed" and all other claim language in the phrase "a first installation assembly installable in a structure during a first stage of construction" will remain unchanged.

> **B.     A Second Installation Assembly Mountable to Said First Installation Assembly During a Second Stage of Construction**

The second dispute involves the phrase "a second installation assembly mountable to said first installation assembly during a second stage of construction" found in Claim 1. The parties first dispute the construction of the term "mountable"—Draper argues that it should read "designed to be installed" and Stewart argues that it should read "capable of being installed." For the reasons set forth in Section II.A., *supra*, the court adopts Draper's construction, and the term "mountable" will be construed to mean "designed to be installed." The parties also propose to change the language that begins and ends the phrase in which "mountable" is used in the same manner as they did for the language beginning and ending the phrase in which "installable" is used as discussed above.[2] As above, the parties do not argue these changes, and they do not appear to be in controversy. The court therefore will not construct them.

Stewart also asserts that after the phrase describing the second installation assembly, the phrase "the second installation assembly is separate and distinct from the

---

[2] Draper's proposed construction of the phrase is: "a second collection of assembled parts designed to be installed to a first installation assembly during a phase of construction following the first stage of construction." Stewart's proposal reads: "a set of parts capable of being installed during a later stage of construction after the first installation assembly."

first installation assembly and is not attached to the first assembly before the first assembly is installed in the structure" should be added. Stewart proposes this addition to make clear that the two installation assemblies are completely separate and are not attached to each other before the first assembly is installed in the structure. Draper opposes the additional language, arguing that it improperly narrows the claim scope.

Stewart is not merely asking the court to give meaning to the claim language in the '629 patent, it is asking the court to rewrite that claim language to describe the state of the two assemblies prior to installation. However, nothing in the patent claims or specification limits the attachment of the two assemblies before the first installation assembly is installed. While the '629 patent clearly explains a projection screen system that is designed to be installed in two stages, the patent describes a *single* projection screen system. As the two installation assemblies are described as components of one system, one could imagine a case where it was packaged and sold as one item. How those pieces are packaged or attached prior to installation is not covered or limited by the claim language. The '629 patent claims its novelty in the installation of the system itself, not in its state prior to that installation. The scope of the patent is not so narrow to limit how the two assemblies are packaged, sold, attached, or otherwise prior to installation. The patent language is simply silent on that issue. Thus, the court will not read Stewart's proposed limitation into the claim language discussed above.

For the above reasons, "mountable" as used in the second phrase in dispute is defined as "designed to be installed," the other language in that phrase will remain

unchanged, and the court rejects Stewart's additional language proposed.

### C. Mountable to the Structure

"Mountable to the structure" appears in Claim 1 of the '629 patent and is used in the phrase "a projection screen housing mountable to the structure and defining and interior volume" in describing one of the components of the first installation assembly. Draper proposes that "mountable" should be constructed to read "designed to be coupled," while Stewart proposes the construction "capable of being mounted."

The primary dispute with the term "mountable" in this context is the dispute discussed in Section II.A, *supra*, and the court adopts that reasoning here to find that the "able" phrase on the end of "mount" means "designed to be" rather than "capable of being." As the court noted above, Stewart's "capable of being" construction is too broad and does not reflect the meaning of the "able" suffix in the context of the '629 patent. Further, constructing the term "mountable" to be "capable of being mounted" gives no meaning to the phrase in which it is used. Reading the language of the patent, it is clear that the projection screen housing is not merely "capable of being" mounted to the structure, it is "designed to be" mounted to the structure. The "capable of" language indicates that mounting the projection screen housing to the structure is only one of many possibilities. Reading "mountable" in context, however, reveals that the housing is specifically designed to be mounted to the structure in order for the remaining claims to have meaning.

While Draper proposes that "mountable" means "designed to be *coupled*," it gives

no explanation for using the term "coupled" in the construction rather than "mounted." In the context of the claim, the court finds that "mounted" rather than "coupled" is appropriate. The preferred embodiment specifically refers to mounting the housing to the structure. ('629 Patent, 8:24–25). The court finds that by using the word "coupled" rather than "mounted," it would convolute the language rather than give meaning to it. Thus, the phrase "mountable to the structure" means "designed to be mounted to the structure."

### D. Circuitable with All Electrical Wiring that Extends Between said Housing and an Electrical Power Supply of the Structure

This phrase appears in Claim 1 of the '629 patent. The construction dispute in this phrase is the meaning of the word "circuitable." The parties maintain similar positions as they have with other "-able" terms—Draper argues "circuitable" means "designed to be electrically connected," while Stewart argues it means "capable of being electrically connected." The court finds that "circuitable" means "designed to be electrically connected" for the reasons discussed with regard to the other "-able" terms and by a further reading of the claim language, as set forth below. The portion of Claim 1 in which the above phrase appears reads "at least one first power connection module within said housing interior volume and circuitable with all electrical wiring that extends between said housing and an electrical power supply of the structure to enable selective powering of a motor of a second installation assembly." In order for the motor of the second installation assembly to function, which is an integral aspect of the projection

screen system as a whole, the first power connection module must be electrically connected to the wiring between the housing and the structure. Constructing "circuitable" to mean merely "capable of being electrically connected" would make little sense in light of the integral role the electrical connection between the first power connection module and the housing-to-structure wiring plays in the functioning of the claimed projection screen system.

Thus, "circuitable" means "designed to be electrically connected." Although the parties propose different language to end the phrase in which "circuitable" is used,[3] the dispute clearly regards the meaning of "circuitable." As the remaining language is not in controversy, the court will not construct it. Therefore, the phrase will read "a projection screen housing designed to be electrically connected with all electrical wiring that extends between said housing and electrical power supply of the structure."

### E. Connectable

"Connectable" is used in Claim 1 of the '629 patent in the phrase:

> at least one power conduit installable within said housing interior volume and comprising first and second ends, said at least one power conduit first end circuited to said motor and said at least one power conduit second end comprising at least one second power connection module *connectable* to said at least one first power connection module to operatively circuit said motor to the power supply . . . .

('629 Patent, 10:18–25) (emphasis added). Draper argues that "connectable" means

---

[3] Draper proposes that the phrase should mean: "designed to be electrically connected with all electrical paths that lead to the housing." Stewart's proposal of the phrase is: "capable of being electrically connected to all of the electrical wiring between the housing and the electrical power supply of the building."

13

"designed to be joined," and Stewart argues that it means "capable of being connected."

The court adopts the reasoning set forth in the previous sections of this Entry to find that the "designed to be joined" construction is appropriate. With respect to the "designed to be" language, the court has discussed at length the meaning of "-able" terms in the '629 patent. While the general dictionary meaning of the "-able" suffix may mean "capable of," the patent claims and specification indicate that these "-able" terms have a narrower meaning as used in the '629 patent with which Draper's "designed to be" construction comports.

The court also finds that Draper's proposal of the word "joined," as opposed to Stewart's "connected," is more appropriate. While the root of the word "connectable" is "connect," indicating that "connected" is a more logical choice at first glance, the claim language demonstrates that "connectable" has a more specific meaning than "designed to be connected." In the phrase in which it is used, "connectable" refers to the connection of the second connection module to the first connection module. Claim 2 of the '629 patent indicates that both connection modules contain specific connection elements, one of which is a plug and the other of which is a socket. ('629 Patent, 10:32–39). A plug and a socket, by their terms, physically come together to make a connection by inserting the plug into the socket. The court finds that the term "joined" best illustrates this relationship between the first and second power connection modules in the '629 patent. Thus, as it is used in Claim 1 of the '629 patent, "connectable" means "designed to be joined."

### F.     A First Connection Element and a Second Connection Element

The last two terms in dispute are "first connection element" and "second connection element" as they appear in Claim 2 of the '629 patent. Because the parties' proposed constructions are nearly identical with respect to these two terms, the court discusses them together. Claim 2 of the '629 patent reads:

> The projection screen system of claim 1 wherein said at least one first power connection module comprises a *first connection element*, wherein said at least one second power connection module comprises a *second connection element*, and wherein one of said first and second connection elements comprises a socket, and wherein the other of said first and second connection elements comprises a plug insertable into said socket.

('629 Patent, 10:32–39) (emphasis added). Draper proposes that these terms be constructed to mean "a joining element of the first [or second] connection module." Stewart argues that they mean "an element [or a second element] for making an electrical connection."

The court finds that Draper's proposal best defines the first and second connection elements. The claim language itself defines the first and second connection elements as a plug and a socket. Stewart's proposal that these are "elements for making an electrical connection" is not an incorrect description; however, in light of the claim language, it is overly broad. It does not reflect the narrower description of these elements as a plug and a socket, which as discussed in the previous section, are two elements that join to make a connection. Thus, Draper's proposal that the first and second connection elements are "joining elements" of the first and second connection modules best defines the disputed

15

terms as used in the claim language of the '629 patent. As constructed, the phrase "first connection element" means "a joining element of the first connection module," and a "second connection element" means "a joining element of the second connection module."

## IV. Conclusion

Considering the parties written and oral arguments and the relevant law governing claim construction, the above discussion represents the court's findings with respect to the disputed terms remaining in the '629 patent. No terms remain in dispute in the '175 patent.

**SO ORDERED** this 22nd day of May 2008.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic copies to:

Russell E. Cass
SIDLEY AUSTIN LLP
rcass@sidley.com

Marc A. Cavan
SIDLEY AUSTIN LLP
mcavan@sidley.com

Steven C. Coffaro
KEATING MUETHING & KLEKAMP
scoffaro@kmklaw.com

Charles J. Crueger
MICHAEL BEST & FRIEDRICH LLP
cjcrueger@michaelbest.com

Thomas F. Hankinson
SIDLEY AUSTIN, LLP
thankinson@sidley.com

Timothy M. Hansen
MICHAEL BEST & FRIEDRICH LLP
tmhansen@michaelbest.com

Donald Eugene Hasse
HASSE & NESBITT LLC
deh@hn-iplaw.com

Offer Korin
KATZ & KORIN
okorin@katzkorin.com

Richard H. Marschall
MICHAEL BEST & FRIEDRICH LLP
rhmarschall@michaelbest.com

Jacob E. Miota
MICHAEL BEST & FRIEDRICH LLP
jemiota@michaelbest.com

George E. Purdy
BOSE MCKINNEY & EVANS
gpurdy@boselaw.com

Melanie J. Reichenberger
MICHAEL BEST & FRIEDRICH, LLP
mjreichenberger@michaelbest.com

Thomas David Rein
SIDLEY AUSTIN LLP
trein@sidley.com

Thomas Storrs Reynolds II
MICHAEL BEST & FRIEDRICH
tsreynolds@michaelbest.com

Sally F. Zweig
KATZ & KORIN
szweig@katzkorin.com


Copy to:

Richard L. Creighton Jr.
KEATING MUETHING & KLEKAMP, PLL
One East Fourth Street
Suite 1400
Cincinnati, OH 45202